**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| IN RE:<br><br>JTM2 HOLDINGS, LLC,<br><br>    Debtor. | Case No. 24-11105-SMR<br><br>Chapter 7 |
| RANDOLPH N. OSHEROW,<br>CHAPTER 7 TRUSTEE,<br><br>    Plaintiff,<br><br>v.<br><br>TUCKER MAX,<br><br>    Defendant. | Adv. Pro. No. _____ |

**COMPLAINT**

Plaintiff Randolph N. Osherow, in his capacity as Chapter 7 Trustee (the "Trustee" or "Plaintiff") of JTM2 Holdings, LLC ("Debtor" or "JTM2"), by and through the undersigned counsel, hereby files this *Complaint* ("Complaint") against Defendant Tucker Max ("Defendant" or "Max") and respectfully alleges as follows:

## I.  INTRODUCTION

1. Plaintiff brings this action against Defendant to avoid and recover certain fraudulent transfers that occurred during the two-year period prior to the commencement of Debtor's bankruptcy case and to recover damages for breach of fiduciary duty and for equitable

HB: 4911-7045-4403.5

subordination, all arising from the redemption of Defendant's ownership interest in the Debtor and related conduct while Defendant was a member, manager, and shareholder of the Debtor.

2.     As the Debtor's financial condition dwindled, Defendant negotiated and executed the Agreement giving rise to the Transfer—effectively stripping all value from the Debtor and saddling it with millions of dollars of debt—for his own benefit despite his fiduciary duties to the Debtor. Defendant's actions caused the Debtor to suffer significant damages, including an increase in its liabilities and a depletion of its assets, thus contributing to the Debtor's decline into bankruptcy. The net result of the transactions was that the Debtor's liability to Max increased significantly, to the detriment of the Estate and its creditors. Accordingly, the Trustee now files this action to avoid the fraudulent transfers, recover damages for breach of fiduciary duty, and seek equitable subordination for the benefit of the Debtor, the Estate, and all creditors.

## II.     PARTIES

3.     Plaintiff Randolph N. Osherow is the duly appointed Chapter 7 Trustee of the bankruptcy estate (the "Estate") of the Debtor, a Delaware limited liability company, in the above-captioned bankruptcy case ("Bankruptcy Case").

4.     Defendant Tucker Max is an individual and, upon information and belief, is domiciled within, and is a citizen of, the State of Texas and may be served with process at 300 Thomassen Ranch Road, Dripping Springs, Texas 78620 or wherever he may be found.

## III.     JURISDICTION, VENUE, AND STATUTORY AUTHORITY

5.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334(a).

6.     This proceeding is a core proceeding within the meaning of 28 U.S.C. § 157(b)(A), (B), (H) and (O), and the Bankruptcy Court may enter final orders for the matters contained herein.

HB: 4911-7045-4403.5

7. Plaintiff affirms his consent to the entry of final orders or judgments by the Court if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

8. Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).

9. This adversary proceeding is commenced pursuant to Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), 11 U.S.C. §§ 105, 502, 510, 544, 548, 550, and 551, and Texas Business & Commerce Code §§ 24.005 and 24.006 (the Texas Uniform Fraudulent Transfer Act, "TUFTA").

## IV. FACTUAL BACKGROUND

**A. Debtor's Business and Ownership Structure Prior to the Transfer**

10. On July 31, 2020, Max, Zach Obront ("Obront"), and Jevon McCormick ("McCormick") formed JTZ Holdings, LLC to, among other things, serve as a holding company for various subsidiaries, including Scribe Media, LLC ("Scribe Media"), the Debtor's only revenue-generating entity. Effective May 24, 2022, JTZ Holdings, LLC formally changed its name from "JTZ Holdings, LLC" to "JTM2 Holdings, LLC."

11. Prior to the formation of the Debtor, Max, Obront, and McCormick held ownership interests in Scribe Media, which they then contributed to the Debtor upon Debtor's formation in exchange for a corresponding percentage of membership interest in the Debtor.

12. Following the exchange, the Debtor owned 100% of the outstanding equity interest in Scribe Media, and McCormick, Max, and Obront held the following ownership interest in the Debtor: (i) McCormick and Max each owned a 37.5% interest, and (ii) Obront owned the remaining 25% interest.

HB: 4911-7045-4403.5

13. At all relevant times, Max was a member and manager of the Debtor. On March 8, 2021, JTM2 was registered as a foreign limited liability company with the Texas Secretary of State and the application listed Max as a "governing person."

14. Allegedly, Obront and Max then desired to pursue other business ventures and entered into transactions by which their respective shares in Scribe Media and JTM2 were redeemed by the respective companies. First, effective January 1, 2022, Obront exchanged his shares in the Debtor for ownership shares in Scribe Media. As a result of this transaction, McCormick and Max each owned 50% interest in the Debtor, and Scribe Media was owned by Debtor (73.48% interest), Obront (24.49% interest), and three minor holders of profits interests. Then in January of 2023, as discussed in further detail below, Max redeemed his shares in the Debtor.

15. In early 2022, Scribe Media's financial condition began to deteriorate. The company was operating at a loss with its cash flow situation becoming dire. Scribe Media's financial decline directly impacted JTM2, as JTM2 had no other revenue-generating subsidiaries.

16. As of January 11, 2023, Max's 50% membership interest in the Debtor consisted of 5,500,000 common shares ("JTM2 Shares").

17. In 2022 and 2023, JTM2's books and records began to reflect significant operating losses. Around this time, the Debtor's only assets were interests in subsidiaries that were inoperative or insolvent, and the Debtor began facing demands from creditors for various outstanding debts related to Scribe Media. By January 1, 2023, the Debtor's bank account had a balance of only $127.35.

HB: 4911-7045-4403.5

18.     As a subsequent investor in both the Debtor and Scribe Media alleged in a state court lawsuit[1], Scribe Media suffered a $2.2 million net loss and was insolvent in 2022. In an attempt at improving Scribe Media's financial state (and to prevent Max's house from being repossessed by the Internal Revenue Service), Scribe Media used falsified financial statements and projections to secure certain investments in Scribe Media and JTM2 and, thereafter, continued to make a series of misrepresentations in efforts to obtain more investors.

19.     At all relevant times, Defendant—as member, manager, and shareholder of the Debtor—knew or should have known of the Debtor's operating losses and declining financial condition.

**B.      The Share Redemption Transaction**

20.     Notwithstanding JTM2's dwindling financial condition, Max and McCormick—as owners of the Debtor—negotiated for the redemption of Max's JTM2 Shares. Ultimately, Max entered into that certain Share Redemption Agreement (the "Agreement") with JTM2, effective January 11, 2023. Pursuant to the Agreement, JTM2 was to redeem Max's JTM2 Shares (which effectively had no value) in exchange for four installment payments totaling $6,125,000.

21.     Additionally, on January 11, 2023, Max executed his Notice of Resignation, formally resigning from any management position with the Debtor effective that date and making his only connection with the Debtor that of a significant creditor.

22.     On or about January 11, 2023, Debtor paid the first installment pursuant to the Agreement in the amount of $750,000 (the "Transfer") to Max. The Debtor failed to make the three remaining payments due under the Agreement as a result of the Debtor's continuously deteriorating financial condition.

---

[1] The state court lawsuit described is styled, *Jawad Ahsan, John Kim v. Jevon Mccormick*, Case No. D-1-GN-23-003567, in the 200th District Court of Travis County, Texas.

HB: 4911-7045-4403.5

23. At the time of the Transfer, JTM2 was insolvent or became insolvent as a result of the Transfer. As discussed above, the Debtor's books and records reflect operating losses in 2022 and 2023, and the Debtor's only assets were interests in subsidiaries that were inoperative or insolvent. The Debtor's bank account had a balance of only $127.35 just ten (10) days prior to the Transfer—on January 1, 2023. The transaction only added significant debt—of no less than $6,125,000—to the Debtor's balance sheet.

**C.  The Bankruptcy**

24. On September 9, 2024 ("Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code, thereby commencing the Bankruptcy Case.

25. Plaintiff was subsequently appointed as the Chapter 7 Trustee.

26. But for the Transfer being made, the funds transferred to Max would have been property of the Estate.

27. On December 10, 2024, Max filed proof of claim 32-1 in the Bankruptcy Case, asserting an unsecured claim in the amount of $5,375,000. *See* Claims Register, Claim #32-1.

28. On February 21, 2025, the Trustee sent a demand letter to Max requesting return of the Transfer as a fraudulent conveyance, but Max refused to return the funds.

### V.  CAUSES OF ACTION

**A.  Count I – Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. § 548(a)(1)(B).**

29. Plaintiff repeats and re-alleges each of the preceding paragraphs.

30. Plaintiff intends to avoid all transfers and obligations that may be avoided and recovered from Defendant under Chapter 5 of the Bankruptcy Code whether identified in this Complaint or which may be learned of in the course of discovery.

31. The Transfer consisted of money in which the Debtor held a property interest.

32. The Transfer was made within the two (2) years prior to the Petition Date.

HB: 4911-7045-4403.5

33. The Transfer was made to, or for the benefit of, the Defendant.

34. Debtor did not receive reasonably equivalent value in exchange for the Transfer. *See Robinson v. Wangemann*, 75 F.2d 756, 756 (5th Cir. 1935); *see also In re Joy Recovery Tech. Corp.*, 286 B.R. 54, 75 (Bankr. N.D. Ill. 2002) ("[S]tock redemptions are treated as dividends to shareholders which return no value to the company."); *Connelly v. United States*, 602 U.S. 257, 258–59 (2024) (a corporation that pays out money to redeem shares "should be worth *less* than before the redemption.") (emphasis in original); *In re Tri-Star Techs. Co., Inc.*, 260 B.R. 319, 326 (Bankr. D. Mass. 2001) ("[T]he equity interests of an insolvent company have generally no value whatsoever.").

35. The Debtor: (a) was insolvent on the date of the Transfer or became insolvent as a result of the Transfer, (b) engaged, or was about to engage, in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital at the time of, or as a result of, the Transfer, and/or (c) intended to incur, or believed that it would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

36. By reason of the foregoing, the Transfer should be avoided and set aside as a fraudulent transfer under section 548(a)(1)(B) of the Bankruptcy Code.

**B.    Count II – Avoidance of Agreement Pursuant to 11 U.S.C. § 548(a)(1)(B)**

37. Plaintiff repeats and re-alleges each of the preceding paragraphs.

38. The Agreement consists of contractual rights in which the Debtor held a property interest and contractual obligations incurred by the Debtor.

39. The Agreement was entered into within the two (2) years prior to the Petition Date.

40. The Agreement was executed for the benefit of the Defendant, and the obligations therein were incurred for the benefit of the Defendant.

HB: 4911-7045-4403.5

41.     Debtor did not receive reasonably equivalent value in exchange for entering into the Agreement and incurring the obligations described therein.

42.     The Debtor: (a) was insolvent on the date the Agreement was executed (and when the obligations therein were incurred) or became insolvent as a result of entering into the Agreement (and incurring the obligations therein), (b) engaged, or was about to engage, in business or a transaction for which any property remaining with the Debtor was an unreasonably small capital at the time of, or as a result of, entering into the Agreement (and incurring the obligations therein), and/or (c) intended to incur, or believed that it would incur, debts that would be beyond Debtor's ability to pay as such debts matured.

43.     By reason of the foregoing, the Agreement (and the obligations incurred therein) should be avoided and set aside as a fraudulent transfer or obligation under section 548(a)(1)(B) of the Bankruptcy Code.

**C.      Count III – Avoidance of Fraudulent Transfer Pursuant to 11 U.S.C. §§ 544(b) and Tex. Bus. & Com. Code §§ 24.005(a)(2) and 24.006.**

44.     Plaintiff repeats and re-alleges each of the preceding paragraphs.

45.     Pursuant to section 544(b) of the Bankruptcy Code, a trustee may avoid, *inter alia*, any transfer of an interest of the debtor in property that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

46.     The Transfer consisted of money in which the Debtor held a property interest.

47.     The Transfer was made within two (2) years before the Petition Date.

48.     Debtor did not receive reasonably equivalent value in exchange for the Transfer.

49.     At the time the Transfer was made, the Debtor was engaged in business or was about to engage in a business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to their business or transaction, or (b) intended to incur, or believed

or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due within the meaning of section 24.005(a)(2) of TUFTA.

50.     At all relevant times, the Debtor had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 24.002 of TUFTA, which could have avoided the Transfer under applicable non-bankruptcy law.

51.     The Transfer constitutes a fraudulent transfer which should be avoided pursuant to section 544(b) of the Bankruptcy Code and sections 24.005 and 24.006 of TUFTA and are recoverable pursuant to section 550 of the Bankruptcy Code.

**D.     Count IV – Avoidance of Agreement Pursuant to 11 U.S.C. §§ 544(b) and Tex. Bus. & Com. Code §§ 24.005(a)(2) and 24.006**

52.     Plaintiff repeats and re-alleges each of the preceding paragraphs.

53.     Pursuant to section 544(b) of the Bankruptcy Code, a trustee may avoid, *inter alia*, any obligation incurred by the Debtor and/or any transfer of an interest of the debtor in property that is avoidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of the Bankruptcy Code.

54.     The Agreement consists of contractual rights in which the Debtor held a property interest and contractual obligations incurred by the Debtor.

55.     The Agreement was entered into within the two (2) years prior to the Petition Date.

56.     Debtor did not receive reasonably equivalent value in exchange for entering into the Agreement and incurring the obligations described therein.

57.     At the time the Agreement was entered into and the obligations therein were incurred, the Debtor was engaged in business or was about to engage in a business or a transaction, for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or (b) intended to incur, or believed or reasonably should have believed that the

HB: 4911-7045-4403.5

Debtor would incur, debts beyond the Debtor's ability to pay as they became due within the meaning of section 24.005(a)(2) of TUFTA.

58. At all relevant times, the Debtor had actual creditors holding unsecured claims allowable within the meaning of sections 502 and 544(b) of the Bankruptcy Code and section 24.002 of TUFTA, which could have avoided the Agreement (and the obligations incurred therein) under applicable non-bankruptcy law.

59. The Agreement (and the obligations incurred therein) constitutes a fraudulent transfer and/or obligation which should be avoided pursuant to section 544(b) of the Bankruptcy Code and sections 24.005 and 24.006 of TUFTA.

**E.    Count V – Preservation of Avoided Transfer Pursuant to 11 U.S.C. § 551**

60. Plaintiff repeats and re-alleges each of the preceding paragraphs.

61. The Transfer is avoidable pursuant to sections 544 and/or 548 of the Bankruptcy Code and is, therefore, property of the Plaintiff.

62. Thus, the Transfer, or the value thereof, should be preserved for the benefit of the Plaintiff pursuant to section 551 of the Bankruptcy Code.

**F.    Count VI – Recovery of Avoided Transfer Pursuant to 11 U.S.C. § 550.**

63. Plaintiff repeats and re-alleges each of the preceding paragraphs.

64. Plaintiff is entitled to avoid the Transfer pursuant to section 548 of the Bankruptcy Code and/or section 544(b) of the Bankruptcy Code and section 24.005 of TUFTA.

65. Defendant was the initial transferee of the Transfer or the immediate or mediate transferee of such initial transferee or the person for whose benefit the Transfer was made.

66. Pursuant to section 550(a) of the Bankruptcy Code, Plaintiff is entitled to recover from Defendant the Transfer, plus interest thereon to the date of payment the costs of this action.

**G.      Count VII – Disallowance of All Claims Pursuant to 11 U.S.C. § 502(d) and (j).**

67.     Plaintiff repeats and re-alleges each of the preceding paragraphs.

68.     Defendant is a transferee of a transfer avoidable under 548 of the Bankruptcy Code, or section 544(b) of the Bankruptcy Code and section 24.005 of TUFTA, which is property recoverable under section 550 of the Bankruptcy Code.

69.     Defendant has not paid the amount of the Transfer, or turned over such property, for which Defendant is liable under section 550 of the Bankruptcy Code.

70.     Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Defendant, and/or its assignee, against the Estate or Plaintiff must be disallowed until such time as Defendant pays to Plaintiff an amount equal to the amount of the Transfer, plus interest thereon and costs.

71.     Pursuant to section 502(j) of the Bankruptcy Code, all claims of Defendant, and/or its assignee, against the Estate or Plaintiff previously allowed by the Debtor or by Plaintiff, must be reconsidered and disallowed until such time as Defendant pays to Plaintiff an amount equal to the amount of the Transfer.

**H.      Count VIII – Breach of Fiduciary Duty.**

72.     Plaintiff repeats and re-alleges each of the preceding paragraphs.

73.     Defendant, as member, manager, and shareholder of the Debtor, owed fiduciary duties to the Debtor. These fiduciary obligations included, but were not limited to, the duties of loyalty, care, and good faith, and the obligation to refrain from self-dealing and to act in the best interests of the Debtor and its creditors.

74.     Defendant knew or should have known of the Debtor's operating losses, declining financial condition, and its inability to service its debts. Despite the Debtor's dire financial state and his fiduciary duties to the Debtor, Defendant, along with the Debtor's other owner, breached

HB: 4911-7045-4403.5

his fiduciary duty to Debtor by negotiating and executing the Agreement giving rise to the Transfer—effectively stripping all value from the Debtor and saddling it with millions of dollars of debt—for his own benefit.

75. The net result of the transaction was that the Debtor's liability to Max increased significantly, while the Debtor received little or no value in return, further depleting the Debtor's assets and harming the Debtor's Estate and its creditors. As a result of Defendant's actions, Debtor suffered losses and further declined into insolvency for the benefit of the Defendant and at the expense of the Debtor's Estate and its creditors.

76. Accordingly, Plaintiff is entitled to recover from Defendant damages caused by the Defendant's breach of his fiduciary duties.

**I.** **Count IX – Equitable Subordination Pursuant to 11 U.S.C. §§ 510(c)(1) and 105(a).**

77. Plaintiff repeats and re-alleges each of the preceding paragraphs.

78. Defendant's negotiation and execution of the Agreement giving rise to the Transfer that depleted the Debtor's assets, as a member and manager of the Debtor, constitutes inequitable conduct that caused the Debtor and the Estate to suffer significant damages and contributed to the Debtor's decline into bankruptcy. Defendant's inequitable conduct has also resulted in hardship to the entire creditor body and subordination is necessary to remedy such harm.

79. Thus, Defendant's claims should be subordinated to the claims of all general unsecured creditors for purposes of distribution.

## VI.     RELIEF REQUESTED

**WHEREFORE,** for the foregoing reasons, Plaintiff respectfully requests that this Court enter judgment against Defendant as follows:

a) avoiding the Transfer pursuant to sections 544 and/or 548 of the Bankruptcy Code;

b)   avoiding the Agreement pursuant to sections 544 and/or 548 of the Bankruptcy Code;

c)   preserving the avoided Transfer for the benefit of the Estate and Plaintiff or the value thereof pursuant to section 551 of the Bankruptcy Code;

d)   awarding damages in an amount to be determined at trial for Defendant's breach of his fiduciary duties;

e)   directing Defendant to pay to Plaintiff an amount to be determined at trial that is not less than $750,000.00, plus interest and costs, pursuant to section 550(a) of the Bankruptcy Code;

f)   subordinating all Defendant's claims in the Bankruptcy Case to the claims of all general unsecured creditors;

g)   awarding pre-judgment interest at the maximum legal rate running from the date of the Plaintiff's first demand to return the Transfer to the date of judgment with respect to this Complaint;

h)   awarding post-judgment interest at the maximum legal rate running from the date of entry of the judgment until the date the judgment is satisfied, plus costs; and

i)   granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: December 31, 2025                    Respectfully submitted,

HUSCH BLACKWELL LLP

*/s/ Lynn Hamilton Butler*
Lynn Hamilton Butler
State Bar No. 3527350
Lynn.Butler@huschblackwell.com
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 Facsimile

-AND-

HB: 4911-7045-4403.5

Ryan A. Burgett
Tennessee Bar No. 33641
Ryan.Burgett@huschblackwell.com
736 Georgia Avenue, Suite 300
Chattanooga, Tennessee 37402
(423) 266-5500
(423) 266-5499 Facsimile

-AND-

Alejandra Garcia Castro
State Bar No. 24131325
Alejandra.Garciacastro@huschblackwell.com
1900 N. Pearl St., Suite 1800
Dallas, Texas 75201
(214) 999-6100
(214) 999-6170 Facsimile

**SPECIAL LITIGATION COUNSEL FOR RANDOLPH N. OSHEROW, CHAPTER 7 TRUSTEE**

HB: 4911-7045-4403.5